Curtiss L. **COOK**, Plaintiff–Appellant,

v.

**CSX TRANSPORTATION CORPORATION**, Defendant–Appellee.

No. 92–1395.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 1, 1992.

Decided March 19, 1993.

Joel Eric Myron, Jersey City, NJ, argued for plaintiff-appellant.

Kevin Charles McCormick, Whiteford, Taylor & Preston, Baltimore, MD, argued (H. Russell Smouse, Whiteford, Taylor & Preston, Baltimore, MD, Sara E. Hall, CSX Transp., Inc., Jacksonville, FL, on brief), for defendant-appellee.

Before RUSSELL, WILKINSON, and NIEMEYER, Circuit Judges.

## OPINION

NIEMEYER, Circuit Judge:

This case presents the somewhat novel issue of whether an employee attempting to prove a prima facie case of racially disparate discipline under *Moore v. City of Charlotte*, 754 F.2d 1100 (4th Cir.), *cert.*

*denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985), may single out one prior instance of less severe treatment of a person outside the protected class and ignore the range of treatment shown in the record before the court by similar cases, including instances where persons outside the protected class were treated more severely than the employee.

Curtiss L. Cook, a black, contends that his employer, CSX Transportation Corporation (CSX), violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* by subjecting him to discipline more severe than that imposed on white employees for similar misconduct and by conducting a racially discriminatory hearing process. Cook's primary support for these contentions consists of an allegation that one white employee was treated less severely than Cook for comparable misconduct.

The district court granted CSX's motion for summary judgment, finding that Cook had failed to establish a prima facie case of race discrimination under Title VII. The court found, *when considering the record as a whole,* that the discipline imposed on Cook fell within the range of discipline imposed by CSX on others outside the protected class for misconduct similar to that of Cook, and that *no evidence was offered* to show that CSX subjected white employees to a different hearing process from that afforded Cook. After dismissing Cook's federal claim, the court, in the exercise of its discretion, elected not to reach the pendent state tort claim (intentional infliction of emotional distress). For the reasons stated below, we agree with each of the district court's rulings and affirm its judgment.

## I

Cook was hired by CSX in 1973, and between 1974 and 1985 he was disciplined by the company nine separate times, through reprimands, overhead suspensions, and two actual five-day suspensions from work. During his shift on September 9, 1988, Cook was assigned the task of switching two railroad cars from the track on which they were positioned. Instead of doing so, however, Cook informed his immediate supervisor that he "wanted a relief" and thereupon left the rail yard without obtaining a response. Cook was subsequently notified by CSX that he was being charged with a rule violation for failing to switch the railroad cars. He was further informed that a formal investigatory hearing was to take place on September 16 and that he was responsible for arranging for the presence of a union representative and witnesses, if he so desired.

On four separate occasions, Cook's union representative requested and was granted postponements of the disciplinary hearing. On October 4, the hearing was convened. After Cook testified that on the day in question he had informed a crew member that he was ill prior to requesting relief and leaving the CSX yard, Cook's union representative requested and received a recess so that the crew member could be called as a witness.

Cook was subsequently informed by letter and by telephone that the hearing would reconvene on October 20, 1988. When the hearing reconvened on October 20 neither Cook nor his union representative was present because, as he later claimed, the telephone caller misinformed him that the scheduled date was October 21. After a thirty-minute wait, the hearing proceeded as scheduled and additional testimony was presented. The internal investigating officer conducting the hearing determined, on the basis of the testimony presented at both hearings, that Cook was at fault for failing properly to notify his supervisors before absenting himself from duty, and that therefore he had violated CSX Operating Rules 500, 501, and 522.[1]

1. These rules provide, in relevant part:
   500. Employees must report for duty at the designated time and place.
   Employees must not absent themselves from duty, or arrange for a substitute to perform their duties without permission from their immediate supervisor.
   501. Civil and courteous behavior is required of all employees in their dealings with customers, fellow employees and the public....

Based on this determination and Cook's prior disciplinary record, CSX officials decided to dismiss Cook from service.

Following the dismissal, Cook submitted a grievance for arbitration under the Railway Labor Act and the collective bargaining agreement between CSX and the union. Pursuant to that process Public Law Board 4368 issued Award No. 13, determining that Cook had been afforded the process to which he was entitled from CSX and that there was sufficient evidence to support his dismissal. Despite these findings and Cook's "poor service record" during his employment, the Board gave Cook "a last chance opportunity" and ordered CSX to reinstate him on probationary status without back pay. On August 21, 1990, Cook was reinstated by CSX.

In November 1988, while his grievance against CSX was still pending, Cook filed a racial discrimination claim with the Maryland Commission on Human Relations (MCHR), alleging that two white employees of CSX had refused to follow a supervisor's orders but neither was dismissed as Cook had been. In its "Written Finding," the MCHR stated that Cook's grievance hearing had been conducted properly, that the evidence supported a finding that he had absented himself from work without proper notification, and that no evidence existed to support the allegations of racially disparate discipline. Cook requested the MCHR to reconsider its Written Finding and for the first time claimed that he was not provided with the same administrative hearing process as similarly situated white employees of CSX. Cook also repeated his charge of disparate discipline. After the MCHR denied Cook's request for reconsideration, the entire MCHR investigatory file was transferred for an independent review to the EEOC which, in April 1991, determined that the evidence did not establish a violation of Title VII.

Having exhausted his administrative remedies, Cook filed a civil action in district court alleging that CSX had discriminated against him in violation of Title VII by subjecting him to more severe discipline and to a less fair hearing process than that to which similarly situated white employees had been subjected. Cook's complaint also alleged that CSX's actions toward him constituted an intentional infliction of emotional distress, a tort under Maryland law. Ruling on CSX's motion for summary judgment, the district court entered judgment for CSX. The court dismissed the Title VII claim, finding that Cook had failed to establish a prima facie case, and declined to exercise pendent jurisdiction over Cook's state law claim. This appeal followed.

II

On CSX's motion for summary judgment the district court was presented with a record that included the disciplinary histories of nine CSX employees, seven whites and two blacks, all of whom had violated Rule 500.[2] Cook, who was dismissed from employment primarily for a Rule 500 violation, contends that in at least one instance a white was treated less severely for violating Rule 500. Although Cook concedes that no other person had been charged with the same combination of offenses as he had been, he contends that by showing at least one case of *similar* conduct of a white employee who was treated less severely, he established a prima facie case of racial discrimination under *Moore*, 754 F.2d at 1105–06.

The district court concluded from the undisputed record that while several white employees had engaged in conduct of "comparable seriousness" by violating Rule 500 in differing combinations, the precedents "fail to raise an inference of racial discrimination by [CSX] in the imposition of

Employees must not be disloyal, dishonest, insubordinate, immoral, quarrelsome, vicious, careless or incompetent. They must not willfully neglect their duty, endanger life or property. . . .
522. Employees whose duties involve the movement of trains or the proper dispatch of

cars, must exercise good judgment to prevent unnecessary delays.

**2.** Previous versions of Rule 500 were listed by CSX as Rule P and Rule 804. For purposes of this opinion, violations of any of these three rules will be described as Rule 500 violations.

discipline on plaintiff." The court observed:

> The disciplinary records indicate there was a range of punishment imposed on white employees violating Rule 500. For example, R.W. Bassett violated the Rule five times between 1975 and 1986 and never received more than 5 days overhead suspension. Wade Dunnigan violated the Rule twice in 1984 and received a total of 15 days overhead suspension. On the other hand, J.A. Heinzman was dismissed in 1988 for violating Rule 501 after violating Rule 500 three times between 1984 and 1987. R.J. Josselyn violated the Rule seven times between 1969 and 1982, and was dismissed in 1978 when he violated the Rule for the fifth time. He was later reinstated, as was plaintiff. V.W. Metz was dismissed in 1988 for violating Rule 501 after only two other Rule violations between 1979 and 1988. Metz also was reinstated without backpay, as was plaintiff.

> In sum, the disciplinary records indicate that [CSX] imposes a range of punishment to white employees who violate the rules that Cook violated and that the punishment Cook received falls within that range. Cook violated [Rule 500 or its equivalent] four times between 1974 and 1985, in addition to committing five other rule violations. Cook was terminated in 1988 after violating the Rule for the fifth time, and was reinstated almost two years later. At least one white employee with a better disciplinary record received more severe punishment (Heinzman) and another white employee with a better discipline record received the same treatment (Metz).

■ To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees. *See Moore,*

754 F.2d at 1105–06. If the plaintiff succeeds in proving a prima facie case, the burden of going forward shifts to the employer, who must articulate a non-discriminatory reason for the difference in disciplinary enforcement. Should the employer articulate such a non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination. The plaintiff, however, always bears the ultimate burden of proving that the employer intentionally discriminated against him. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Moore,* 754 F.2d at 1106.

■ After considering the record in this case, the district court found that the first two elements of a prima facie case were met. Cook, who is black, is a member of the protected class, and "[a]lthough ... there were [not] any white employees charged with the same combination of offenses as plaintiff," several white employees had violated Rule 500, "the primary offense which led to plaintiff's dismissal," and therefore had engaged in conduct of "comparable seriousness" to that of Cook. This finding commendably reflects an understanding both of the need to compare only discipline imposed for like offenses in sorting out claims of disparate discipline under Title VII and of the reality that the comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances. *See Moore,* 754 F.2d at 1107–11.

Nevertheless Cook was unable to advance proof that he had been disciplined more severely than the white employees who had violated Rule 500. Cook was dismissed for his fifth violation of Rule 500, and at the time of his dismissal, he had been disciplined for five other rule violations. Although the record revealed that CSX treated one white employee with a relatively similar history of misconduct

more favorably than Cook,[3] it also showed that one white employee with a better disciplinary record than Cook was punished more severely,[4] and another with a better record was treated about the same as Cook.[5] The remaining white employees were subjected to varying degrees of discipline for different combinations of violations, including those involving Rule 500.[6] On the basis of all the disciplinary records presented, the district court correctly concluded that CSX imposed a range of discipline for Rule 500–type violations within which Cook's discharge fell and that therefore there was no disparity of treatment from which one could conclude that his discipline was a product of racial discrimination.

■■■ Cook contends that the district court erred in granting summary judgment because it failed to account for the one instance when a white employee received less severe discipline for similar misconduct. We believe, however, that to focus on one piece of the record without considering the whole would distort the permissible inferences to be drawn. The scheme of proof originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and adapted in *Moore* to cases of employee discipline, for establishing a prima facie case by circumstantial evidence is not a precise, mechanically-imposed formulation. In each set of circumstances, the burden is on the plaintiff to prove a set of circumstantial facts, which in the absence of a legitimate non-discriminatory explanation,

leads one to conclude with reasonable probability that the action taken against him was the product of discrimination. *See Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1418 (4th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991). The question confronting a judge faced with determining whether a prima facie case under Title VII has been made is whether the record as a whole gives rise to a reasonable inference of racially discriminatory conduct by the employer. A plaintiff seeking to establish a prima facie case by relying on a broad history of disciplinary enforcement cannot fairly claim that an inference of racial discrimination should be drawn from one factual circumstance taken out of the context of the disciplinary treatment generally afforded by the employer for conduct similar to that of the plaintiff. We find that the district court was correct to look to the entire record before it in making its decision, rather than seizing upon a particular piece of evidence contained within it.

### III

■■ We also find that Cook failed to establish a prima facie case supporting the claim that he was subjected to a racially discriminatory administrative hearing by CSX. He speculates that, if he were white, the company would have rescheduled the second part of his hearing rather than conduct it in his absence. He offers, however, no evidence which might indicate that CSX conducts such hearings differently when a white employee fails to attend. We agree

**3.** One white employee violated Rule 500 five times and also committed four other rule violations. The most discipline ever imposed on this employee for any of his Rule 500 violations was a five-day suspension. Joint Appendix at 174.

**4.** A white employee was dismissed for his fourth rule violation, three of which involved Rule 500, and has not been reinstated. Joint Appendix at 176.

**5.** A white employee was dismissed following his third rule violation, all involving Rule 500, and was subsequently reinstated nearly six months later. Joint Appendix at 179.

**6.** One white employee committed two Rule 500 violations and was suspended each time; at the time of those offenses, the employee's record

indicated four other assorted violations. Joint Appendix at 175. Another white employee was dismissed following his fifth Rule 500 violation, an incident which also involved the consumption of alcohol before work; the employee was reinstated nearly fifteen months later, but has since committed two more violations of the rule, and been suspended for thirty days and reprimanded. Joint Appendix at 178. Another white employee with three other rule violations on his record was reprimanded following his only violation of Rule 500. Joint Appendix at 180. The disciplinary record of the seventh white employee indicated no violation of Rule 500. Joint Appendix at 173.

with the district court that unsupported allegations do not establish a prima facie case of race discrimination under Title VII.

## IV

■ Having dismissed Cook's Title VII claim pursuant to the motion for summary judgment, the district court chose, in its discretion, not to reach his state tort claim for intentional infliction of emotional distress arising from the alleged Title VII violation. In these circumstances we find no abuse of discretion.

For the reasons given, the judgment of the district court is affirmed.

AFFIRMED.