1 F.3d 1234
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Glenda ROBERTS, Plaintiff-Appellant,
v.
GENERAL ELECTRIC COMPANY, Defendant-Appellee.
 No. 92-2479.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 9, 1993.
Decided: August 9, 1993.
 
 WOMEN'S LEGAL DEFENSE FUND, Amicus Curiae. Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (CA-92-293-HM)
 Mary DeSales Linton, Washington, D.C., for Appellant.
 Stanley Mazaroff, Venable, Baetjer & Howard, Baltimore, Maryland, for Appellee.
 Marley S. Weiss, University of Maryland School of Law, Baltimore, Maryland; Donna R. Lenhoff, Judith L. Lichtman, Helen L. Norton, Women's Legal Defense Fund, Washington, D.C., for Amicus Curiae.
 D.Md.
 AFFIRMED.
 Before RUSSELL, Circuit Judge, G. Ross ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Glenda Roberts (Roberts) appeals from the district court's grant of summary judgment in favor of General Electric (GE) on her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq., and 42 U.S.C. Sec. 1981 for unlawful racial discrimination in connection with her demotion from a managerial position at GE. Because Roberts failed to establish a prima facie case of racial discrimination in GE's disciplinary measures, we affirm.
 
 I.
 
 2
 Roberts is a GE employee at the General Electric Information Services Division (GEIS) in Rockville, Maryland. In December of 1990, GE promoted Roberts to the position of Core Systems Manager, an executive level position. Simultaneous to her promotion, Roberts submitted six delinquent expense reports for seminar trips she had taken. On reviewing these reports, GEIS's finance manager Mark Asel observed that Roberts had claimed virtually the same amount for every meal-just under $25-without any supporting documentation.[1] This unusual occurrence led Asel to report these discrepancies to his supervisor, Stephen Waechter, the chief financial officer. Upon reviewing Roberts' expense reports, Waechter notified the President of GEIS, Hellene Runtagh. Runtagh directed Waechter to investigate whether Roberts had falsified her reports.
 
 
 3
 An audit of Roberts' expense reports revealed that Roberts filed claims for more money than she actually spent at two conferences in 1990. The largest discrepancy was Roberts' claim for reimbursement of a $950 admission charge to a conference that actually cost Roberts nothing to attend. The auditor, John Meyer, also found Roberts' practice of claiming meals just under the $25 level without receipts unbelievable. The auditor informed Waechter of the results of the audit on January 15, 1991, who concluded that Roberts "had intentionally falsified her expense reports."
 
 
 4
 Waechter informed President Runtagh of these problems and recommended that GE terminate Roberts. This recommendation was consistent with his recommendations in the cases of four white employees whom Runtagh terminated earlier that year for falsifying expense reports. Despite Waechter's recommendation, Runtagh decided only to reprimand Roberts. Accordingly, Runtagh demoted Roberts from the Core Systems Manger position on January 16, 1991, but allowed her to remain with the company at her previous salary.
 
 
 5
 Roberts subsequently filed a complaint in the district court on January 31, 1992, alleging racial employment discrimination and retaliation. After discovery, GE filed a motion for summary judgment, supported by detailed evidence of Roberts' falsification of her expense reports and evidence that GE had discharged white employees who had engaged in similar conduct.[2] The only evidence introduced by Roberts in opposition to GE's motion was Roberts' unsigned, unsworn answer to GE's interrogatories.[3]
 
 
 6
 On October 26, 1992, the district court granted GE's motion for summary judgment. The court found that the "circumstances and evidence in this case create the strongest possible inference that the decision in Plaintiff's case was legitimate and that the reasons given for her demotion were not pretextual." The court also concluded that Roberts failed to make out a prima facie case of discrimination. The court reached that conclusion based on the fact that during that seven months prior to Roberts' demotion, President Runtagh had discharged four white employees for falsifying expense reports. Therefore, the court reasoned, the discipline GE imposed on Roberts was actually less severe than the discipline imposed on similarly situated white employees. The district court also relied on this Court's decision in Proud v. Stone, 945 F.2d 796 (4th Cir. 1991), to raise the inference that because the employment decisions had been made by the same person over a relatively short period of time, a"powerful inference" that the employer was not motivated by discrimination was raised. Roberts appeals.
 
 II.
 
 7
 Roberts argues that the district court erred in concluding that she failed to establish a prima facie case of racial employment discrimination. Because she did fail to do so, we affirm the district court.
 
 
 8
 In order to establish a prima facie case of a discriminatory demotion, a plaintiff must prove: (1) that she is a member of the class protected by Title VII, (2) that her misconduct was of comparable seriousness to the misconduct of employees not within the protected class, and (3) that the discipline imposed on her was more severe than that imposed on the similarly situated employees. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). We review the district court's grant of summary judgment de novo, and draw any permissible inference from the underlying facts in the light most favorable to the party opposing the motion. Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992), cert. denied, 113 S. Ct. 1276 (1993). Summary judgment is appropriately granted only where the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. We believe that is the case here.
 
 
 9
 To establish the first requirement of the prima facie case, Roberts must show that she is a member of a class protected by Title VII. Roberts, who is black, satisfies this criteria. Cook, 988 F.2d at 511.
 
 
 10
 The second element of the prima facie case requires Roberts to show that the conduct that she engaged in was comparable in seriousness to the misconduct of employees who are not members of the protected class. Id. Although Roberts contends that a factual distinction exists between her conduct and that of one of the white employees discharged for falsifying expense reports, we find that she also satisfied this requirement.
 
 
 11
 Between 1980 and 1991, GE terminated the employment of eight white employees for irregularities in their expense account reports. Joint App. at 245. Four of those employees were discharged within months of Roberts' demotion. Those four were discharged for intentionally falsifying expense reports. Joint App. at 236. In Roberts' case, CFO Waechter believed that she had intentionally falsified her expense reports and recommended disciplinary action on that basis. Joint App. at 238. From this evidence we conclude that Roberts' conduct was comparable in seriousness to the misconduct of the white employees.
 
 
 12
 Despite this evidence, Roberts argues that the treatment of one white employee, Peter Manetti, demonstrates that her demotion was racially motivated. As the district court observed, however, Manetti did not make claims for money he did not spend. This single fact distinguishes the seriousness of Manetti's conduct from Roberts' while aligning her situation with the four discharged white employees who had intentionally falsified their expense reports. Therefore, we reject Roberts' contention that she and Manetti were similarly situated. In any event, a single instance of differential treatment may not establish a prima facie case of racial employment discrimination where "the context of the disciplinary treatment generally afforded by the employer for conduct similar to that of the plaintiff" demonstrates that the plaintiff was not treated in a dissimilar fashion. Cook, 988 F.2d at 512.
 
 
 13
 The third element that Roberts must meet to establish the prima facie case is to show that the similarly situated employees of another race were not treated as severely. Id. Roberts has failed to satisfy this requirement. GE introduced substantial evidence to show that similarly situated white employees were discharged for falsifying expense reports. Joint App. at 236, 245. In addition, according to Auditor Meyer's affidavit, to his knowledge Roberts was the only individual at GEIS who had claimed reimbursement for conference fees when she had, in fact, been charged nothing to attend the conference. Joint App. at 245. Thus, Roberts' misconduct was more serious than that of her white co-workers, while her discipline was less severe. Therefore, Roberts has failed to establish the requirement that she demonstrate that the similarly situated employees of another race were not treated as severely as herself.[4]
 
 V.
 
 14
 Because Roberts failed to establish a prima facie case of racial employment discrimination, we affirm the district court's grant of summary judgment to GE.
 
 AFFIRMED
 
 
 [1]
 GE employees filing claims for meals costing greater than $25 must submit a receipt documenting the amount
 
 
 [2]
 GE introduced affidavits of President Runtagh, CFO Waechter, Auditor Meyer, and Finance Manager Asel to support their motion for summary judgment
 
 
 [3]
 We note at this point that these unsworn, unsigned answers to interrogatories do not meet the requirements of Fed. R. Civ. Pro. 56(e). Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 n.17 (1970); EEOC v. Clay Printing Co., 955 F.2d 936, 945 n.9 (4th Cir. 1992). As such, we do not consider them to be part of the record on appeal. See Clay Printing, 955 F.2d at 945 & n.9. At oral argument, Roberts repeatedly referred to an alleged racial statement made by a GE employee, found only in that document. Roberts failed to obtain any affidavits to support her recollection of this statement or to properly attest to her own version of the statement. Therefore, these references go beyond the record in this case and argument based on this "fact" was highly improper
 
 
 [4]
 Roberts argues that the district court erred in granting summary judgment on her retaliation claim. Because Roberts completely failed to press this claim properly, we reject her argument on this as well
 In response to Roberts' assertion that she offered"myriad direct and indirect evidence to support her claim," GE points out that the only evidence Roberts offered, and even cites, is the unsigned, unsworn answers to interrogatories, which, as we noted above, fail to satisfy the requirements of Fed. R. Civ. Pro. 56(e) and are therefore inadmissible. In addition, Roberts failed to point out the specific facts, if any, that supported her claim to the district court. Even if her version of the facts were accepted as true, the foundation conduct for her retaliation claim-her statement to her employer that she would seek a legal remedy-is not protected activity, see Jamil v. Secretary, Dep't of Defense, 910 F.2d 1203, 1207 (4th Cir. 1990), and Roberts' misconduct was an adequate ground for the discipline imposed; a retaliation claim is not a protection for employees who engage in conduct that calls for discipline. Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). Therefore, we affirm the dismissal of Roberts' retaliation claim.