70 F.3d 1262
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Thelma B. JOHNSON, Personal Representative of the Estate of
Anthony J. Binford, Plaintiff-Appellant,
v.
RJR NABISCO BRANDS, INCORPORATED; Local Union 358, Bakers,
Confectionery and Tobacco Workers' International
Union, AFL-CIO, Defendants-Appellees.
 No. 94-2545.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1995
Decided Dec. 5, 1995.
 
 ARGUED: Sa'ad El-Amin, EL-AMIN & CRAWFORD, P.A., Richmond, Virginia, for Appellant. Charles B. Scher, WILLIAMS, MUL
 LEN, CHRISTIAN & DOBBINS, Richmond, Virginia, for Appellee RJR Nabisco; Jay Joseph Levit, LEVIT & MANN, Richmond, Virginia, for Appellee Union. ON BRIEF: Beverly D. Crawford, ELAMIN & CRAWFORD, P.A., Richmond, Virginia; Janipher W. Robinson, JANIPHER ROBINSON, LTD., Richmond, Virginia, for Appellant. James V. Meath, WILLIAMS, MULLEN, CHRISTIAN & DOBBINS, Richmond, Virginia, for Appellee RJR Nabisco.
 Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Anthony J. Binford brought this suit against his employer, RJR Nabisco Brands, Incorporated (Nabisco), alleging that his termination without just cause violated the collective bargaining agreement between Nabisco and Local Union 358 of the Bakers, Confectionery, and Tobacco Workers' International Union, AFL-CIO (Union) and was racially motivated in violation of 42 U.S.C.A. Sec. 1981 (West 1994). Binford also claimed that the Union violated his rights by failing to take appropriate action to rectify the alleged discrimination. Thelma B. Johnson, personal representative of Binford's estate, now appeals from the grant of summary judgment in favor of Nabisco and the Union.[1] We affirm.
 
 I.
 
 2
 On August 22, 1992, while working on the production line, Michael Whitaker, an African-American employee of Nabisco, suffered a severe facial laceration that required seventeen stitches. Although Whitaker initially explained that he cut his face on the door of a production machine, there was no physical evidence to support his story. An investigation into the incident revealed that Binford, another African-American employed by Nabisco, had struck Whitaker with a broom handle while fighting. Both Binford and Whitaker were terminated as a result of the altercation. After failing to obtain reinstatement through the grievance process, Binford filed this action.
 
 
 3
 The district court granted summary judgment in favor of Nabisco and the Union. It concluded that Binford had not presented sufficient evidence to create a genuine issue of material fact with respect to the elements of a prima facie case of racial discrimination in the application of employee discipline leading to his termination. Specifically, the court concluded that he had failed to show any incidents of fighting between other employees that were comparably serious to his altercation with Whitaker in the degree or threat of harm in which employees outside the protected class had been treated differently than Binford. See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir.1993). The district court also determined that Binford had failed to establish an independent theory of liability against the Union under Sec. 1981 and that his theory against the Union was without merit because it was based solely on his allegations against Nabisco.
 
 II.
 
 4
 Binford argues that he presented sufficient evidence to survive summary judgment by introducing evidence of seven altercations involving employees outside of the protected class who were not terminated. He argues that each of these incidents is comparably serious to his altercation with Whitaker, regardless of the harm caused or threatened, because Nabisco maintained a mandatory policy of terminating all employees involved in fighting or threatening bodily injury while at work. Although Binford did present evidence that Nabisco established such a policy in 1979, the evidence was undisputed that the company had modified its policy at least by 1988 to permit, but not require, termination for incidents of fighting. Only two of the seven instances to which Binford points occurred before 1988, and the employees involved were terminated.[2] The remaining five instances, having occurred after 1988, were not subject to the mandatory dismissal policy. Accordingly, Binford has not established, on this basis, that Nabisco enforced its termination policy in a racially disparate manner.
 
 
 5
 Binford also argues that these seven incidents of employee altercations involving employees outside of the protected class were of comparable seriousness--in both the threat and degree of harm--to his altercation with Whitaker, and that even without reference to Nabisco's mandatory termination policy, these incidents establish a prima facie case of racially disparate treatment. But, after carefully reviewing the record and considering the arguments of counsel, we affirm the grant of summary judgment to Nabisco and the Union for the reasons adequately stated by the district court in its memorandum opinion. Binford v. RJR Nabisco Brands, Inc., No. 93-647 (E.D.Va. Nov. 17, 1994).
 
 AFFIRMED
 
 
 [1]
 Because Binford died after the notice of appeal was filed, we granted a motion to substitute Binford's personal representative pursuant to Federal Rule of Appellate Procedure 43(a). For ease of discussion, however, we will continue to refer to the appellant as "Binford."
 
 
 [2]
 Although the employees involved in these two incidents were terminated, Binford maintains that the incidents are relevant to show disparate treatment based on the circumstances surrounding the terminations