**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LUZ A. LONG; SYLVIA E. VELEZ;
MAYELA D. SALVADOR; LILIAN P.
BAEZA,
Plaintiffs-Appellants,

No. 95-1986

v.

FIRST UNION CORPORATION OF
VIRGINIA, d/b/a First Union Bank,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-94-1175-A)

Argued: April 1, 1996

Decided: May 29, 1996

Before MURNAGHAN and HAMILTON, Circuit Judges, and
LAY, Senior Circuit Judge of the United States Court of Appeals
for the Eighth Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael E. Veve, LASA, MONROIG & VEVE, Wash-
ington, D.C., for Appellants. Marty Norenburg Martenson, SMITH,
CURRIE & HANCOCK, Atlanta, Georgia, for Appellee. **ON**

**BRIEF:** J. Thomas Kilpatrick, Jennifer R. Williams, SMITH, CURRIE & HANCOCK, Atlanta, Georgia; Filiberto Agusti, Henry E. Hockeimer, Jr., STEPTOE & JOHNSON, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Luz A. Long, Sylvia E. Velez, Mayela D. Salvador and Lilian P. Baeza are bilingual Hispanic employees and former employees of the defendant, First Union Bank ("the bank"). [1] They appeal the district court's grant of summary judgment on their claim that the bank discriminatorily enforced an English-only language policy against them in 1992. The plaintiffs claim the bank's disparate treatment of them based on national origin constitutes discrimination in their terms and conditions of employment in violation of 42 U.S.C.§ 2000e-2(a).[2]

According to the plaintiffs, on October 1, 1992, the bank's branch manager told the plaintiffs they were not to speak Spanish at the work place unless they were assisting Spanish-speaking customers. The manager told the plaintiffs that another bank employee had complained about the plaintiffs' use of Spanish at the bank and that she thought speaking Spanish in front of non-Spanish speaking employees was "very rude[.]" J.A. 39. On October 23, 1992, the manager orally reiterated this policy to the plaintiffs and later distributed a memoran-

_____

[1] First Union Bank is the successor-in-interest of the Dominion Bank, which employed the plaintiffs at the time of the operative facts in this case. First Union Bank formally acquired Dominion Bank in April 1993.
[2] The plaintiffs do not appeal whether adoption of the policy itself constituted national origin discrimination against them, and thus we do not address this issue.

2

dum to all bank employees announcing the English-only language policy.**3** On November 10, 1992, the manager heard two of the plaintiffs speaking Spanish; in front of customers and other employees, the manager "scream[ed]" that "the next person . . . speaking Spanish [is] going to be out . . . the door." J.A. 91. The bank later asked the plaintiffs and other employees to sign the memorandum announcing the policy. Luz Long refused; the manager called Long a"troublemaker[.]" J.A. 160. The manager also took subsequent disciplinary actions against Long which the plaintiffs allege were related to her speaking of Spanish in the work place, but the bank claims were based on poor job performance. During this time, the bank took no actions to enforce the policy against other, non-Hispanic employees.**4** The reason for this lack of enforcement--discrimination or the lack of comparable violations--is the central dispute on appeal.**5**

Discriminatory enforcement of an employer's rules may be shown by direct or circumstantial evidence of discrimination. A prima facie case of discriminatory enforcement of an employer's rules is (1) plaintiffs' membership in a protected class, (2) comparable misconduct by the plaintiffs and employees outside the protected class, and (3) more severe enforcement against the plaintiffs than the other employees. See Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105-06 (4th Cir.), cert. denied, 472 U.S. 1021 (1985).

_____

**3** On November 4, 1992, the manager distributed another memorandum to all employees, reiterating the policy, stating,"This all boils down to common courtesy. How would you feel if everyone around you were speaking and laughing aloud in a language that you could not understand." J.A. 243.

**4** The only employees who spoke Spanish at the bank were the Hispanic plaintiffs. Thus, in this case, the terms "Spanish speaking" and "Hispanic" are interchangeable.

**5** In December 1992, the plaintiffs initiated discrimination charges with the Equal Employment Opportunity Commission ("EEOC") and the local human rights commission. While the charges were being formalized, the bank manager was replaced by an Hispanic female and the bank rescinded the English-only policy. In April and May 1993, the bank apologized to the plaintiffs for the English-only policy. Based in part on the bank's letters of apology, the EEOC found a violation of Title VII and issued a right-to-sue letter. The plaintiffs filed suit in 1994.

The parties dispute whether plaintiffs have shown any misconduct by other employees comparable to the plaintiffs' continued speaking of Spanish in violation of the bank's English-only policy. The bank contends it took no actions against non-Hispanic employees because none violated the English-only policy while the policy was in effect. The bank points to deposition testimony by Long that she could not remember any incident in which other bank employees spoke a language other than Spanish in violation of the policy. J.A. 227. The bank also points to the deposition of plaintiff Mayela Salvador who, when asked whether she ever heard other employees speak to each other in a language other than English, said no. Supp. App. 22-23.

To rebut this evidence, the plaintiffs point to deposition testimony by Lilian Baeza and Sylvia Velez. They urge this testimony creates a genuine issue of material fact regarding the discriminatory enforcement of the policy. Baeza testified she "saw other people who speak another language speak, their own language, and nobody said anything to them." J.A. 86. Velez testified that other employees spoke in languages other than English "[a]ll the time[,]" J.A. 127, and that despite a complaint about prior incidents to the assistant bank manager, "nothing was done about it. They didn't give them a memo." J.A. 130.

The fundamental weakness in the plaintiffs' argument is that their evidence does not specify at what time the non-Hispanic employees spoke in languages other than English. Baeza did not specify any dates, and could not identify the name of one of the two non-Hispanic employees who she claims spoke to each other in a language other than English. J.A. 87. Velez, who identified two pairs of non-Hispanic employees who spoke languages other than English, acknowledged that one of the employees left the bank in April 1992, "months before" the policy took effect. J.A. 133. Further, when asked whether two particular employees she identified spoke Vietnamese after October 1, 1992, Velez testified, "I believe so. I don't recall the dates. . . . I'm not sure." J.A. 128-29.

We find this factual basis inadequate to sustain the plaintiffs' claim of disparate treatment. Under Fed. R. Civ. P. 56(e), a non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Without adequate evidence that other employees com-

4

mitted comparable violations of the bank's policy instituted on October 1, 1992, the plaintiffs cannot sustain a prima facie case of discriminatory enforcement of the policy.**6** Thus, in the absence of direct evidence of discrimination against Hispanic employees in the enforcement of the English-only policy, we affirm the district court's grant of summary judgment to the bank.**7**

For the foregoing reasons, the judgment is

AFFIRMED.

_____

**6** Even assuming that a trier of fact could infer from the plaintiffs' evidence the existence of some incident after October 1, 1992 in which a non-Hispanic employee spoke in a language other than English to another employee, this fact would not be sufficient to sustain a claim for discrimination in light of the fact that the plaintiffs spoke Spanish among themselves on a significantly greater number of occasions. See Cook, 988 F.2d at 512.

**7** The plaintiffs argue the policy was harshly enforced against them, implying that the manner of enforcement reveals a discriminatory intent. On the facts of this case, however, we do not find any national origin based animus in the manner of enforcement of the policy. The fact that the bank manager screamed "the next person . . . speaking Spanish [is] going to be out . . . the door[,]" J.A. 91, does not necessarily reflect a discriminatory intent, but rather may reflect her management style and perhaps exasperation with employees for failing to abide by a bank policy.

5