**Lester STOVALL, Plaintiff,**

v.

**Noel SMITH, et al., Defendants.**

**Civil No. PJM 95–303.**

United States District Court,
D. Maryland.

Sept. 25, 1996.

Lester Stovall, Lynda S. Stovall, Laurel, MD, for Plaintiff.

Marilyn L. Baker, John R. Mooney, Richard W. Gibson, Washington, DC, Stephen D. Graeff, Philip Matthew Schwartz, Carr, Mor-

---

**5.** Skopbank and GGF have filed a motion to intervene in Civil No.1997–63 and a separate notice of removal. Skopbank and GGF do not have standing because they are not "aggrieved persons," and their motion to intervene is therefore denied.

ris & Graeff, Washington, DC, for Defendants.

## OPINION

MESSITTE, District Judge.

Having unsuccessfully attempted to sue multiple individuals and entities on a variety of causes of action,[1] Pro Se Plaintiff Lester Stovall is left with claims of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and § 1981 of the Civil Rights Act of 1991, 42 U.S.C. § 1981, against Defendant Pepsi–Cola of Washington, D.C., LP ("Pepsi"). The Court now addresses Pepsi's Motion for Summary Judgment on the two remaining counts. Upon consideration of the motion, Stovall's opposition and the entire record, the Court has determined to GRANT the motion. Judgment will be entered in favor of Pepsi.

## I.

Stovall, an African American, was employed as a route salesman out of Pepsi's Forestville, Maryland distribution center, beginning with the franchise's inception on July 25, 1990. On August 24, 1993, he was suspended without pay and subsequently terminated for alleged falsification of company documents, grounds for immediate termination under Pepsi's written work rules.

While employed by Pepsi, Stovall was a member of the International Brotherhood of Teamsters Local Union 67 ("Local 67"). On the day after his suspension, he formally requested the union to file a grievance against Pepsi protesting the suspension. In his explanation of the incident to the union, Stovall admitted that he had erred in counting the number of cases of Pepsi left on his truck at the end of the day as recorded on the settlement sheet for that day's sales. He contended, however, that, upon a second counting requested by the check-in supervisor who discovered the discrepancy, he readily acknowledged the mistake. While Stovall claims to have signed a second settlement sheet reflecting the shortage, Pepsi's computerized inventory and billing system reflected no second document, a fact Stovall attributed to a problem with the system.

Pepsi claimed that Stovall deliberately falsified company documents by altering the original computerized print out to cover the shortage of 56 cases of soft drinks on his truck. Pepsi alleged that Stovall manually entered 56 additional cases into the computerized system while the checker was busy conducting his physical inventory of the truck. The checker refused to sign the final inventory statement under the circumstances.

Following a grievance hearing initiated by Local 67, the union refused to seek arbitration of the termination despite Stovall's demand that it do so. Stovall then filed an unfair labor practice charge against the union, alleging that it had violated Section 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. 158(b)(1)(A), in failing to fairly represent him in the grievance process. After "a good faith assessment of the merits of [the] case," finding no "hostility, arbitrary reasons, or other improper motives," the National Labor Relations Board was unpersuaded. No racial animus was charged and none was found.

Stovall then filed charges of racial discrimination with the Equal Employment Opportunity Commission and, following receipt of his right to sue letter, with this Court. In this proceeding Stovall contends that he was terminated "because he was short on product," while "a white committed a similar offense but was not terminated." Pepsi responds that Stovall was discharged for falsifying company documents not for product shortage, which would not warrant discipline let alone discharge so long as Pepsi was reimbursed for the missing product by the route salesman. Pepsi, moreover, submits that Stovall was not treated less favorably than any similarly situated non-minority employee.[2]

---

1. The several putative defendants and causes of action were dismissed by earlier orders of the Court.

2. Pepsi, it may be noted, is itself a minority-owned firm.

## II.

Summary judgment is appropriate if there is no genuine issue of material fact that could lead a rational trier of fact to find for the non-moving party. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). While all justifiable inferences must be drawn in favor of the nonmovant, *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990), the non-moving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. *Beale v. Hardy,* 769 F.2d 213 (4th Cir.1985).

Although *pro se* litigants are held to a less stringent standard than trained attorneys, they still must allege facts that state a cause of action. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), *Beaudett v. City of Hampton,* 775 F.2d 1274 (4th Cir. 1985), *cert. denied,* 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 729 (1986).

## III.

■ The requirements for a plaintiff's prima facie case under Title VII and § 1981 are the same. *Gairola v. Virginia Dept. of Gen. Serv.,* 753 F.2d 1281, 1285–86 (4th Cir.1985).

> [T]he plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

*Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a non-discriminatory reason for the difference in disciplinary enforcement. *Id.* If the employer meets this burden, the burden shifts back to the plaintiff to prove that the employer's reasons are false and instead serve as a pretext for discrimination. *Id.* Finally, the plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against him. *Id.* (citing *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). "The most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." *Moore v. City of Charlotte, N.C.,* 754 F.2d 1100, 1105 (4th Cir.) *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). An obvious problem with claims of racial discrimination in the disciplinary context arises under the requirement that the court must compare the plaintiff's discipline with the discipline imposed against persons outside the plaintiff's class for similar offenses. However, in reality "the comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same set of circumstances." *Cook,* 988 F.2d at 511.

■ Stovall has satisfied only the first of the three elements of proof for a prima facie case, that he was a member of a protected class. As for the second element, that his misconduct was comparable in seriousness to the misconduct of employees outside the protected class, Stovall cites no specific instances of similar misconduct on the part of unprotected others with which to compare his own conduct. Reference to a "white" who "committed a similar offense . . . (being) short on product" hardly suffices. Apart from his failure to identify the individual, being short on product is not the same as falsifying data. As Pepsi has pointed out, had there been a mere shortage in Stovall's product and had he covered it, he would still be employed.

As for the third element, that the disciplinary measures taken against him were more severe than those enforced against employees outside the protected class, again Stovall provides no evidence. He presents no facts regarding disciplinary measures enforced against any other employee accused of falsifying company documents.[3]

---

**3.** Stovall suggests that in 1992 a white employee named Tony Woods was discharged for letting a

white employee ride in a company truck in violation of company rules and in 1995 a black em-

Because he has failed to establish the second and third requirements of a prima facie showing of racial discrimination, the analysis need proceed no further. The Court will grant Defendant's Motion for Summary Judgment and enter judgment in its favor on Stovall's Title VII and § 1981 claims.

A separate Order implementing this decision will be entered.

### FINAL ORDER OF JUDGMENT

Upon consideration of Defendant Pepsi–Cola of Washington, D.C., LP's Motion for Summary Judgment and Plaintiff Stovall's Opposition thereto, it is for the reasons set forth in the accompanying Opinion, this 25th day of September, 1996

ORDERED that said Motion for Summary Judgment is hereby GRANTED; and it is further

ORDERED that final judgment is hereby ENTERED in favor of Defendant Pepsi–Cola of Washington, D.C., LP and against Plaintiff Lester Stovall.

ployee named James Fletcher was discharged for letting a black employee ride in his truck and was discharged and that Woods was reinstated in six weeks, but Fletcher was not. Arguably these facts might bear on a disparate treatment claim by Fletcher, but they are totally irrelevant to a claim of disparate treatment by Stovall.