43 F.3d 1465
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Sandra BURWELL, Plaintiff-Appellant,
v.
PHILIP MORRIS, INC.; Anthony French, Sr., Defendants-Appellees,
and
Benjamin Perkinson, Jr.; Russell Dandridge; Richard
Wraase, Defendants.
 No. 94-1519.
 United States Court of Appeals, Fourth Circuit.
 Argued: Nov. 3, 1994.
Decided: Dec. 15, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. James R. Spencer, District Judge. (CA-91-391-3)
 ARGUEDh Sa'ad El-Amin, EL-AMIN & CRAWFORD, P.C., Richmond, VA, for Appellant. Jeffrey Mark DeBord, HUNTON & WILLIAMS, Richmond, VA, for Appellees. ON BRIEF: Beverly D. Crawford, EL-AMIN & CRAWFORD, P.C., Richmond, VA, for Appellant. Patricia K. Epps, HUNTON & WILLIAMS, Richmond, VA, for Appellees.
 E.D.Va.
 AFFIRMED.
 Before HALL and MICHAEL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Sandra W. Burwell, a black female, sued her former employer, Philip Morris, Inc., and her two former supervisors, Benjamin Perkinson and Anthony French, alleging racial discrimination in their disciplinary practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17 (1988 & Supp. V 1993), and Sec. 1981 of the Civil Rights Act of 1991, 42 U.S.C. Sec. 1981 (Supp. V 1993). Finding that Burwell had not established a prima facie case of racial discrimination, the United States District Court for the Eastern District of Virginia granted the defendants' motion for summary judgment. For the reasons discussed below, the district court's order is affirmed.
 
 I.
 
 2
 Burwell worked for Philip Morris from 1977 until August 1992, when she was terminated. In August 1988, she was assigned to the Leaf Processing Facility in Richmond, Virginia and named Group Supervisor of Administration in the Blended Leaf Plant. Burwell supervised approximately six employees. Burwell reported to Benjamin Perkinson (white) from October 1989 until January 1992. From January 1992 until August 1992 she reported to Russell Dandridge (black). Both Perkinson and Dandridge reported to the General Manager Anthony French (black).
 
 
 3
 Beginning in December 1989, and continuing until her discharge in August 1992, several employees repeatedly filed complaints against Burwell. The complaints generally alleged that Burwell was rude, autocratic, harassing, and not participatory in her management style. Philip Morris instructed Burwell to improve her management style following the first complaint in December 1989. Burwell's performance appraisals, covering September 1990 until June 1992, rated her below requirements in the managerial skills and affirmative action areas. Additionally, Burwell received several written reprimands for her poor management style throughout this period.
 
 
 4
 In an effort to resolve the conflicts between Burwell and her employees, French asked Karen Watson, from the Organization and Management Development department, to work with Burwell on improving her interpersonal skills and relationships with her employees. Watson arranged for an independent consultant, Dr. Peter Shoras, to conduct "team-building" sessions. Dr. Shoras interviewed all of Burwell's employees and conducted a full day, off-site session with the employees and Burwell. In July, Philip Morris paid for Burwell to attend a "Peak Performance" seminar in California.
 
 
 5
 Despite Philip Morris' repeated instruction to Burwell that she improve her management style, the complaints against her continued. On August 14, 1992, Burwell was suspended pending an investigation of her inability to manage her workforce. On August 14 and 17, Steve Herdt and Barry Curtis (with the affirmative action department) interviewed all six of the employees who reported to Burwell as well as Bernice Watts who used to report to her. All but two of those interviewed reported that Burwell was rude and intimidating. On August 19, 1992, following a meeting with Dandridge, Herdt, and Diane Roberts (black), Manager of Affirmative Action, French decided to terminate Burwell for mistreating her employees.
 
 
 6
 On June 3, 1993, Burwell filed suit against Philip Morris, Perkinson, and French for racial discrimination in their disciplinary practices.[1] The district court granted the defendants' motion for summary judgment, and Burwell appeals the district court's order.
 
 II. SUMMARY JUDGMENT
 
 7
 When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir.1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. This Court reviews the district court's grant of summary judgment de novo. EEOC v. Clay Printing Co., 955 F.2d 936 (4th Cir.1992). Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are crucial elements. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate. To the contrary, " 'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.' " Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).
 
 III. ANALYSIS
 
 8
 Burwell alleges that her termination was the result of racial discrimination by Philip Morris' disciplinary practices which violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e to 2000e-17 (1988 & Supp. V 1993), and Sec. 1981 of the Civil Rights Act of 1991, 42 U.S.C. Sec. 1981 (Supp. V 1993). The requirements for a plaintiff's prima facie case under Title VII and Sec. 1981 are the same. Gairola v. Virginia Dept. of Gen. Serv., 753 F.2d 1281, 1285-86 (4th Cir.1985).
 
 
 9
 [T]he plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.[2]
 
 
 10
 Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir.1993). Once the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a non-discriminatory reason for the difference in disciplinary enforcement. Id. If the employer meets this burden, then the burden shifts back to the plaintiff to prove that the employer's reasons are false and instead serve as a pretext for discrimination. Id. Finally, the plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her. Id. (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). "The most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed." Moore v. City of Charlotte, N.C., 754 F.2d 1100, 1105 (4th Cir.), cert. denied, 472 U.S. 1021 (1985). An obvious problem with claims of racial discrimination in the disciplinary context arises under the requirement that the court must compare the plaintiff's discipline with the discipline imposed against persons outside the plaintiff's class for similar offenses. However, in reality "the comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." Cook, 988 F.2d at 511.
 
 
 11
 The district court found that Burwell failed to establish the second and third elements of her prima facie case. Burwell argued that the misconduct of two white employees was comparable in seriousness to her misconduct and that those two employees were treated less severely than she was. Burwell argues on appeal that Philip Morris' treatment of the two white employees constituted sufficient evidence to establish a prima facie case of racial discrimination; and therefore, the district court erred in granting the defendants' motion for summary judgment.
 
 
 12
 Burwell contends that Donnie Gunn and Ray Jenkins engaged in conduct at least as serious, if not more serious, than she did, yet Philip Morris did not terminate either of them.
 
 
 13
 Following a complaint by a supervisor of Gunn's that the maintenance shop was being run by hourly employees because Gunn owed money to several of the employees, Philip Morris conducted an investigation of Gunn. The investigation revealed that Gunn owed money to several of his employees; that Gunn had removed large boxes and bags from the plant to his car by obtaining blank material passes from his supervisor; that a Philip Morris vendor may have given him inappropriate gifts and was charging high prices for supplies; and that inappropriate posters were displayed with management knowledge. This investigation resulted in Gunn being transferred and downgraded three levels on March 13, 1992.
 
 
 14
 From October 27, 1990 to September 4, 1991, Underwood, Jenkins's supervisor, and others complained that Jenkins engaged in racial discrimination and harassment. The complaints also accused Jenkins of threatening employees for making complaints to the union. Philip Morris sent Jenkins a memo on September 23, 1991 which noted that Jenkins had a sensitivity problem with people who were racially or culturally different from him and in his approach when instructing employees. The memo stated that management was unable to substantiate the allegations of race discrimination and harassment, but that Jenkins had lost his effectiveness as a supervisor on "B" shift, and therefore, would be reassigned to the Leaf Processing Facility as Process Supervisor.
 
 
 15
 This Court finds no merit in Burwell's claim of disparate treatment. First, Gunn's misconduct is not comparable in seriousness to Burwell's because Gunn's misconduct involved the mishandling of company property; while Burwell's misconduct involved her continued abuse of her employees. Second, Jenkins's misconduct is not comparable to Burwell's because his performance improved when he was reassigned, and the complaints against him were fostered in part by his supervisor, Underwood. Furthermore, Burwell received repeated warnings for almost three years and was told that if she did not improve her management style, termination would result. To the contrary, Philip Morris disciplined Gunn and Jenkins within five months and eleven months, respectively, of the complaints levied against them. Philip Morris also provided Burwell with several opportunities to improve her management skills; whereas, Gunn and Jenkins were not given these opportunities.
 
 
 16
 Consequently, this Court finds that Gunn and Jenkins's situations do not involve misconduct that is comparable in seriousness to Burwell's. Even if the conduct were comparable, this Court does not find that Philip Morris treated Burwell more severely than it treated Gunn and Jenkins in light of the many opportunities that it gave Burwell to improve. Because Burwell failed to establish the second and third requirements of a prima facie case of racial discrimination, the district court properly granted the defendants' motion for summary judgment.
 
 
 17
 For the foregoing reasons, the order of the district court is
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The complaint also alleged sexual discrimination against all defendants and named Dandridge and Richard Wrasse as individual defendants. Following stipulation by the parties, the district court dismissed these claims
 
 
 [2]
 The district court stated the third requirement as follows: "(3) that the discipline imposed on her was more severe than that imposed on the similarly situated employee." Burwell v. Philip Morris, Inc., No. 3:93CV391, slip op. at 7 (E.D. Va. March 8, 1994) (citing Cook, 988 F.2d at 511). To clarify this requirement, the relevant comparison should not center around similarly situated employees, rather, the court should compare offenses which are comparable in seriousness to the plaintiff's misconduct. The focus is on similar offenses, not similar employees