EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

NORTHWEST STRUCTURAL
COMPONENTS, INC.,
Defendant.

No. 6:91CV00052.

United States District Court,
M.D. North Carolina,
Winston–Salem Division.

Feb. 24, 1993.

Ronald J. Arrington, E.E.O.C., Charlotte Dist. Office, Charlotte, NC, for plaintiff.

David C. Pishko and Robert M. Elliot, Elliot, Pishko, Gelbin & Morgan, P.A., Gordon W. Jenkins, Jenkins, Lucas and Jenkins, Winston–Salem, NC, for defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge

This action was instituted by the Equal Employment Opportunity Commission ("EEOC") on February 1, 1991. The EEOC alleged in its complaint that the Defendant discriminated on the basis of sex in violation of Title VII of the Civil Rights Act of 1967, as amended, 42 U.S.C. § 2000(e) *et seq.* The allegations are based on Defendant's refusal to re-employ Elizabeth Rhodes, a female, as a truck driver. Presently before the court is Defendant's motion for summary judgment. For the reasons discussed below, this court will DENY the Defendant's motion.

## I. BACKGROUND

Defendant Northwest Structural Components, Inc. (hereinafter "Northwest") is a company which builds and sells roof trusses and other products for houses and structures. Plaintiff Elizabeth Rhodes applied for a job as a truck driver for Northwest in October 1987. She was employed effective November 1987. The job required her to deliver trusses on flatbed dump trucks.

In August 1988, Rhodes gave notice that she had decided to leave her job at Northwest. She voluntarily terminated her position on September 11, 1988.

Several months later she decided she wanted to return to Northwest. Between November 1988 and March 1989, she made several inquiries about potential openings. Northwest, through Kerry Gionis, made the decision not to re-employ Rhodes. Rhodes continued to seek employment with Northwest until she filed a charge of discrimination on June 16, 1989.

Northwest's stated reasons for not rehiring Rhodes are the following: (1) Rhodes had gotten into several disputes with customers; (2) she was argumentative and made continuous complaints; (3) she did not properly maintain the trucks. *Defendant's Brief in Support of Motion for Summary Judgment,* Exh. 1, Gionis Aff.

Rhodes contests these reasons. She claims she was not rehired because she is a woman.

## II. DISCUSSION

Summary judgment is appropriate in those cases where there exists no genuine dispute as to a material fact and the moving party is entitled to a judgment as a matter of law. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Pulliam Invest. Co., v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

Under Title VII, it is unlawful for an employer to refuse to hire an employee based on an employee's sex. There are at least two proof schemes which a plaintiff may follow in establishing the existence of sex discrimination. The first is under ordinary principles of proof by presentation of any evidence that sex was a determining factor in the selection decision. The second is the *McDonnell Douglas*[1] proof scheme which relies on inferences from so-called indirect and circumstantial evidence and shifting burdens of proof

1. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

and production. *See Tuck v. Henkel Corp.*, 973 F.2d 371, 374–75 (4th Cir.1992).

Both methods of proof compel this court to deny Defendant's motion for summary judgment.

## A. *Direct Evidence of Discrimination*

■ Under "ordinary" principles of proof, Rhodes has presented sufficient evidence to defeat a motion for summary judgment. Rhodes has presented substantial evidence which, if believed, supports her claim of discrimination. Such evidence includes, but is not necessarily limited to, affidavits and deposition testimony to the effect that:

(1) In November or December 1988, Deborah Ford, personnel manager, mentioned to Kerry Gionis, vice president, that Ms. Rhodes was interested in returning to the company and was eligible to be rehired. Gionis replied that "a woman just does not fit in out there." (Ford Aff. at 3.)

(2) In November or December 1988, Ford was instructed to place an advertisement in the local newspaper for drivers. Ford was aware that Rhodes wanted to be reinstated as a driver and personally informed Gionis of this fact. Ford was instructed to place the advertisement anyway. When there was no response, she was instructed to run the advertisement again. (Ford Aff. at 3.)

(3) John McClive, production manager, admitted to Rhodes that the reason that she had not been rehired was because Frank Harvey, shipping supervisor, did not want a female truck driver. (Rhodes Aff. at 4–5.)

(4) If Frank Harvey assisted Rhodes in performing her responsibilities of securing loads, this was because of his personal bias against her, not because she could not perform this task. (Beatty Aff. at 2.)

(5) Frank Harvey strayed from the rule of making assignments to new trucks based on seniority in order to avoid assigning Rhodes a new truck. A male employee was assigned one ahead of her. (Bulstrom Dep. at 26–27; Rhodes Aff. at 3–4.)

(6) Rhodes complained to Kerry Gionis, vice-president of Northwest, that she had not been assigned to one of the new trucks because of her sex. Gionis did not request that the assignment be changed. (Rhodes Aff. at 4; Gionis Dep. at 58–63.)

(7) Harvey wanted to "get rid" of Rhodes because he did not like women driving the trucks. (Beatty Aff. at 1.)

(8) Rhodes did not experience any serious customer complaints based upon her being rude to customers. (Rhodes Aff. at 3; Beatty Aff. at 2.)

(9) Rhodes's personnel file does not contain any documentation concerning any disciplinary problems or counselling sessions concerning problems with her job performance. (Ford Aff. at 2.)

(10) Between September 1987 and April 1991, Defendant rehired six drivers. Henry Cook had been fired on several occasions for various reasons, but was rehired on September 17, 1987, for the final time. He was fired again in September 1988. Donald Kiger was fired in September 1987, for being intoxicated, having damaged company equipment, and poor attendance. He was rehired in September 1987, as a driver. On January 25, 1988, he quit to accept other employment. On May 17, 1988, he was rehired. On June 27, 1988, he quit again without notice and is not eligible for rehire. Reymundo Del Real quit his job as a truck driver with Northwest in September 1987, after having a dispute with then Plant Manager Brent Holcomb. He was rehired in April 1990, after assuring McClive that the prior problems would not recur. Jesse White quit his job as a truck driver with Northwest in 1982. He was rehired in 1989. (McClive Dep. at 108–110; Gionis Dep. at 48–53, 80–82, Ex. 4 and 5.)

(11) On or about December 12, 1988, Jack Tedder was hired as a driver. He had a Class A license a short period of time and "was probably not as qualified as Lynn Rhodes." (McClive Dep. at 93.)

(12) On or about December 19, 1988, David Williams was hired as a driver. Williams had only obtained a chauffeur's license five months before applying for the position. (McClive Dep. at 93–94, Pl.'s Ex. 9.)

Northwest disputes the truth and probativity of some of these contentions, and this

---

court does not express any opinion as to the proper resolution of these factual disputes. The significant point, of course, is that the issues are disputed. Based on the evidence before the court, reasonable people could disagree on several factual issues. Hence, this court concludes that the dispute is "genuine." Furthermore, if the factual disputes are resolved in favor of Rhodes, then a reasonable jury could find that Defendant discriminated against Rhodes. Thus, these factual issues are "material." It appears that the merit of Plaintiff's claim ultimately hinges on the credibility of her witnesses, but it is not the court's task to determine credibility at summary judgment. Since Plaintiff has presented evidence which, if believed, supports a finding of discrimination, summary judgment is not appropriate.

### B. The *McDonnell Douglas* Proof Scheme

The result is the same under the *McDonnell Douglas* method. Under *McDonnell Douglas*, a plaintiff in a Title VII action, has the burden of proving the *prima facie* elements of his or her case. The burden then shifts to the defendants to produce evidence of a legitimate non-discriminating basis for its action. If the defendant does so, then the plaintiff must produce evidence that demonstrates that the defendant's legitimate reasons were not its true reasons, but were a pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973). *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

#### 1. The *Prima Facie* Case

The *prima facie* case, in the context of a sex discrimination case, requires that the plaintiff show by preponderance of the evidence that: (1) she belonged to a protected class, (2) she applied for a position for which she met minimum qualifications, (3) the employer rejected her, and (4) after rejecting the claimant, the employer sought applicants with similar qualifications. *See Hagans v. Clark,* 752 F.2d 477, 481 (9th Cir.1985) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824).

Plaintiff's evidence is sufficient to make a *prima facie* case for summary judgment pur-

poses. Rhodes is a woman who applied for a position as a trucker, and the defendant employer rejected her. The employer continued to seek and, in fact, hired two white male applicants with similar or lesser qualifications.

#### 2. Employer's Burden of Production

Once the *prima facie* case is established, the employer is required to produce evidence establishing a legitimate non-discriminatory reason for the decision not to hire a claimant. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. Defendant has attempted to meet this burden by describing Rhodes as having a poor attitude and being a complainer. However, the only specific evidence of her complaining concerns complaints of unfair treatment because of her sex. This does not appear to be a legitimate non-discriminatory reason for refusing to hire someone.

Defendant has, however, produced evidence to the effect that there were customer complaints concerning Rhodes. Thus, Defendant has likely met its burden of at least producing some evidence of a legitimate non-discriminatory purpose.

#### 3. Employee's Burden to Show Pretext

Next the plaintiff must produce evidence that demonstrates, by a preponderance of the evidence, that the defendant's reasons are merely pretext for discrimination. *Id.* In the summary judgment context, this means that Rhodes must bring forth evidence upon which a reasonable jury could find by a preponderance of the evidence that the defendant's proffered reasons—complaining, bad attitude, customer problems—are only a pretext.

As indicated above, Rhodes has presented evidence upon which a reasonable juror could find discriminatory intent. This same evidence could support a reasonable jury's finding of pretext. Plaintiff has evidence that directly contradicts Defendant's reason for not rehiring her and all the other evidence pertaining to the disputed facts suggests pretext as well. Again, if the factual disputes are resolved in favor of Rhodes, as it must be assumed on summary judgement when credibility of witnesses is crucial, then a reason-

able jury could find that Defendant discriminated against Rhodes.

In short, under either proof scheme, if Rhodes's evidence is viewed in the most favorable light and she is given the benefit of all reasonable inferences, summary judgment is inappropriate. The court cannot enter judgment for the Defendant without discounting Plaintiff's evidence and essentially deeming all of the Defendant's witnesses to be credible. Of course, the court is not to make credibility determinations at the summary judgment stage, rather it is a task for the trier of fact at a later date.

For the foregoing reasons it is hereby ordered that Defendant's motion for summary judgment is DENIED.

An order in accordance with this memorandum opinion shall be filed contemporaneously herewith.