**Johnny R. GAITHER, Sr., Plaintiff,**

v.

**WAKE FOREST UNIVERSITY, Defendant.**

No. 1:00CV00069.

United States District Court, M.D. North Carolina.

Dec. 21, 2000.

Shonna R. Alexander, Winston–Salem, NC, for Plaintiff.

Penni Pearson Bradshaw, Kilpatrick Stockton, L.L.P., Winston–Salem, NC, for Defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge.

This matter comes before the court on Defendant Wake Forest University's (the University) Motion for Summary Judgment. Plaintiff Johnny R. Gaither, Sr., alleges race discrimination and breach of contract in connection with his termination from employment with the University. Plaintiff filed a claim with the Equal Employment Opportunity Commission (EEOC) on March 26, 1999. He was issued a right to sue letter on September 29, 1999. Plaintiff filed this action in state court on December 29, 1999, and it was removed to this court on January 19, 2000.

For the reasons herein, the Motion for Summary Judgment will be granted.

## I. FACTUAL BACKGROUND

The facts stated in the light most favorable to the Plaintiff are as follows. Plaintiff worked continuously for the University in various maintenance or grounds keeping positions from 1978 until he was terminated on November 13, 1998. The University's termination form states the reason for termination as "failure to adhere strictly to Wake Forest Univ. safety policies and procedures, earless [sic] performance of duties, including continued failure to maintain established standards of workmanship or productivity." (Pl.'s Dep., Ex. 5.) The reason is stated on the back side of a termination checklist signed by Plaintiff on October 13, 1998. Plaintiff's supervisor, Charles Boger, gave Plaintiff a letter of termination prepared by Jim Coffey, grounds superintendent. The termination letter outlined four allegations for which Plaintiff was fired: watching a tree being cut down without wearing safety glasses; leaving an area by driving across the lawn instead of using the driveway; sitting in a University truck and reading for more

than 15 minutes; and talking to landscape contractors instead of working. (Compl.¶ 13.) Before receiving the letter of termination, Plaintiff had never received any warnings about the four specific incidents for which he was fired.

Plaintiff's employment file at the University contains a record of 14 different policy infractions, most of which Plaintiff admitted having knowledge. They are described in chronological order as follows:

(1) January 13, 1992, Corrective Action Report of an oral warning given for abusing work time. (Pl.'s Dep., Ex. 14.) Plaintiff denied that he had ever seen it before.

(2) A Corrective Action Report, dated November 30, 1992, that Plaintiff committed the following infractions of the University's work standards:

> Employee was seen several times during the morning, regular work hours, cruising in a WFU vehicle, in the vicinity of the Professional Center. He was then seen sitting in a WFU vehicle across from the Professional Center until approximately 1:20 p.m.—He then had a brief conversation doing personal business with a contractors [sic] employee at the Professional Center.... Employee was also involved in removing University property without proper authorization.

(Pl.'s Dep., Ex. 7.)

Plaintiff was informed that future infractions could result in a penalty layoff, suspension pending review, and/or termination. (Pl.'s Dep. at 42–43; id., Ex. 7.)

(3) An April 28, 1993, Corrective Action Report of a verbal warning that Plaintiff left work early without notifying his supervisor. (Id., Ex. 15.) Plaintiff contended that he did inform his supervisor. (Id. at 62.)

(4) An August 16, 1993, handwritten note stating that Plaintiff was warned not to miss another scheduled daily meeting with David Davis, his supervisor. (Id., Ex. 16.) Plaintiff testified that he did not remember this incident. (Id. at 63.)

(5) A note handwritten by David Davis, dated August 17, 1993, which stated that he caught Plaintiff either sleeping or reading the paper during work hours. (Id., Ex. 17.) Plaintiff said he did not recall the incident. (Id. at 64.)

(6) A typed note, dated December 3, 1993, stated that Jim Coffey found Plaintiff sleeping in a University truck and that Plaintiff was uncooperative when told to pick up litter. (Id., Ex. 18.) Plaintiff was informed in a meeting with his supervisors that the next such violation could lead to possible termination. Plaintiff denied sleeping and contended that he picked up litter without argument. (Id. at 66.)

(7) A July 21, 1994, Corrective Action Report of a verbal warning, signed by Plaintiff, stating that Plaintiff took unauthorized breaks and entered Polo Road houses during working hours. (Id., Ex. 19.) Plaintiff admitted to the truth of the report. (Id. at 67.)

(8) A March 13, 1995, verbal warning (originally filed as a written warning and then amended) for Plaintiff's failure to properly load a garbage truck, possibly causing equipment damage. (Id., Ex. 21.) Plaintiff testified that he did not recall seeing the report. (Id. at 71.)

(9) On June 1, 1995, Plaintiff was suspended pending review for sleeping on the job and failing to follow University procedures. The report, which was not signed by Plaintiff, stated that Plaintiff would be terminated in the event of future infractions. (Id., Ex. 8.) Plaintiff did not indicate whether he was familiar with this report, nor did he state that he had not seen it before.

(10) In addition to the warnings in Plaintiff's file, Defendant produced a memorandum dated November 6, 1995, from Jerome McDaniel, the recycling/sanitation coordinator, to Jim Coffey. (Id., Ex. 22.) The memorandum described McDaniel's encounters with Plaintiff regarding Plaintiff's failure to pick up trash and litter and to replace garbage cans. The letter stated

that Plaintiff repeatedly failed to follow directions and signed out at a later time than his actual departure. Although Plaintiff recalled the encounter, he denied the substance of McDaniel's complaints and said he had never seen the document. (*Id.* at 71–74.)

(11) A March 13, 1996, written warning listed Plaintiff's infraction for failing to report an accident involving damage to University property. (*Id.*, Exs. 9–10.) The warning stated that Plaintiff was expected to "follow all procedures and report all accidents as quick as possible" and that future infractions could lead to a penalty layoff. (*Id.*, Ex. 10.) Plaintiff refused to sign the written warning because he disagreed with his supervisor's statement that he had damaged a University truck. (*Id.* at 47–48.) According to the report, the truck had gotten stuck in the mud near the dump and was damaged when a landfill employee tried to use the blade on his loader to push the University truck out of the mud. (*Id.*, Ex. 10.) While Plaintiff admitted that there was $700 worth of damage to the University truck, he contended that it was not his fault. (*Id.* at 48.) However, Plaintiff admitted that he failed to report this incident as required by University policy. (*Id.* at 50.)

(12) On July 9, 1997, Plaintiff was issued a notice of an employee safety violation for overloading a forklift and obstructing the driver's vision. (*Id.*, Ex. 11.) Plaintiff admitted in his deposition that "the boxes were not as stable as they could have been" but argued that it was common practice to overload the forklifts. (*Id.* at 52.)

(13) A July 21, 1997, typed letter stating that Plaintiff had not used proper care with University equipment assigned to him. (*Id.*, Ex. 20.) Namely, he ran into another University truck and failed to report the incident. The letter warned of future disciplinary action if further infractions occurred. (*Id.*, Ex. 20.) Plaintiff contended that he had never seen the docu-

ment but that he had a conversation of that nature with Jim Coffey. (*Id.* at 69.)

(14) Following a July 31, 1998, Corrective Action Report, Plaintiff received a penalty layoff of three days without pay for removing University property without prior authorization. (*Id.*, Ex. 12.) The incident had been reported to the University police by the foreman of the drywall company doing work at a residence hall. (*Id.*, Ex. 13.) Plaintiff admitted that he removed a five-gallon bucket of sheet rock mud from a dormitory. (*Id.* at 53.) In fact, he added in his deposition that he actually took two buckets of mud, later returned upon request, and used a University truck to bring it to his own vehicle. (*Id.*)

At some point subsequent to his hiring, Plaintiff received a copy of the University's employee handbook, which states that it "has been prepared to acquaint you with policies and procedures, benefits, services and responsibilities that are a part of employment at Wake Forest University." (*Id.*, Ex. 1.) Plaintiff alleges that Defendant does not reserve the right to terminate employees, except for those in their introductory period, at any time without giving the employee notice or following certain procedures. However, the employee handbook expressly states:

> The information provided in this book is intended to be a summary of procedures, policies, guidelines and an overview or summary of benefit plans. This booklet does not constitute a contract of employment and is not intended to create any contractual rights, either expressed or implied, between the University and its employees. The employment relationship is by mutual consent (employment-at-will) and may be terminated by the employee or the University at any time and for any reason.

(*Id.*, Ex. 1.)

In fact, despite Plaintiff's allegation that he had a continuing contract with the University, he admitted in his deposition that "Well, it's [the employee handbook] not a

contract.... They [the University] can terminate at their will." (*Id.* at 26, 28.)

## II. DISCUSSION

A summary judgment motion should be granted only if there is no genuine dispute as to an issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The district court must evaluate the evidence, as established through pleadings, affidavits, depositions, and other discovery documents, in the light most favorable to the nonmoving party and draw all reasonable inferences from the facts in that party's favor. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

### A. Plaintiff's Title VII Claim

■ A plaintiff may meet its burden of proof in a Title VII case in two ways. The first is by presenting evidence that race was a determining factor in the employment decision. *See Equal Employment Opportunity Commission v. Northwest Structural Components, Inc.,* 822 F.Supp. 1218, 1220 (M.D.N.C.1993). If such evidence is not available, the plaintiff must rely on inferences and circumstantial evidence to prove his case under the *McDonnell Douglas* burden-shifting standard. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To survive summary judgment under this standard, a plaintiff first must establish a prima facie case of discrimination under Title VII.

■ To prove a prima facie case of discriminatory termination, Plaintiff must prove that (1) he is a member of a protected group; (2) he was qualified for his position and his job performance was satisfactory; (3) Plaintiff was discharged in spite of his qualifications and performance; and (4) following his termination, the position remained open to similarly qualified applicants. *See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 455 (4th Cir.1989). To satisfy the fourth prong, Plaintiff may show that he was replaced by someone not in his protected class. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186–87, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989). Plaintiff did not produce any evidence regarding the fourth prong, but the court will base its decision on other factors.

■ Plaintiff has failed to produce any evidence that he was performing his duties at a satisfactory level at the time of his termination, beyond his own opinion of his performance. While Plaintiff claims that he "worked in good standing for Defendant," (Compl.¶ 6), the evidence before the court shows that Defendant repeatedly violated the University's policies and was certainly on notice that further infractions could result in his termination.[1] Thus, it appears that Plaintiff has failed to establish a prima facie case of race discrimination.

■ Even if Plaintiff were able to establish a prima facie case of discrimination, he has not shown that Defendant's legitimate, nondiscriminatory justification for Plaintiff's termination was pretext for discrimination. Once a plaintiff has stated a prima facie case, the employer must provide a legitimate nondiscriminatory justification for its action. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). Defendant has provided ample evidence that it fired Plaintiff for policy infractions and unsatisfactory performance. Therefore, the burden shifts back to Plain-

---

1. While Plaintiff claims that it is a "reasonable expectation that a twenty year employee would have a few policy infractions," (Pl.'s Resp. Def.'s Mot.Summ.J. at 7), fourteen incidents and a three-day suspension are neither reasonable nor few in number. Furthermore, while a showing of a favorable employment history does not require perfection, as Plaintiff pointed out in his response brief, Plaintiff has failed to produce any evidence showing a remotely positive work history, other than his own opinion. Plaintiff's contentions that other employees were as unsatisfactory as he do not satisfy the second prong of a prima facie case.

tiff to prove this justification is a mere pretext for an actual discriminatory motive. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507–508, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

The Fourth Circuit has held that, to establish that an employer's justification is pretext for discrimination, a plaintiff must prove " 'both that the reason was false, and that discrimination was the real reason' for the challenged conduct." *DeJarnette v. Corning Inc.,* 133 F.3d 293, 298 (4th Cir.1998) (quoting *Jiminez v. Mary Washington College,* 57 F.3d 369 (4th Cir. 1995)); *see also Gillins v. Berkeley Elec. Coop., Inc.,* 148 F.3d 413 (4th Cir.1998) (stating that "[t] his court has adopted what is best described as the 'pretext-plus' standard for summary judgment in employment discrimination cases").

Therefore, to defeat summary judgment Plaintiff must bring forth evidence upon which a reasonable jury could find by a preponderance of the evidence that Defendant's proffered reason—unsatisfactory performance—was false. Plaintiff must also bring forth evidence showing that Defendant's real reason for firing him · was discriminatory. Plaintiff has failed to produce any evidence by which a jury could find either that Defendant's nondiscriminatory reason for firing Plaintiff was false or that the real reason was discriminatory. Plaintiff relies on his contention that similar policy infractions by white employees were overlooked, as well as his own opinion of his performance, to prove pretext. Neither of these contentions supports a jury finding that Defendant's justification was false.

With regard to Plaintiff's claim that he should not have been fired despite his repeated policy violations, the court may not review or second-guess an employer's business decisions. *See Equal Employment Opportunity Commission v. Clay Printing Co.,* 955 F.2d 936, 946 (4th Cir.1992). The Supreme Court has held that Title VII is not to be used as "a vehicle for substituting the judgment of a court for that of the employer." *Jiminez v. Mary Washington College,* 57 F.3d at 369, 377. Therefore, Plaintiff cannot survive a motion for summary judgment by opining that his employment record was favorable where Defendant has documented repeated policy violations; that is a business decision left in the hands of the employer, unless pretext is shown by evidence beyond a negative record. Plaintiff must do more than rely on his own opinion. *See DeJarnette,* 133 F.3d at 299 (stating that, "[w]ith respect to opinion testimony, we have repeatedly explained that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff") (citations omitted).

In addition to Plaintiff's opinion that he performed satisfactorily, he stated in his deposition that two other co-workers, Willie Davidson and Jeff Martin, heard supervisor David Davis say that "it's too dark around here" when he started work at the University 10 years earlier. (Pl.'s Dep at 75.) Davidson, however, testified that he had never heard Davis make any such statement. (Davidson Aff. at 1.) Moreover, Martin did not start working for Defendant until a few years after Davis began his employment there, so Martin could not have heard any comment allegedly made years earlier. Thus, the only proof Plaintiff has produced is his own statement, and the knowledge in it comes from hearsay that is not supported by the evidence. Based on this meager showing, a reasonable juror could not find a discriminatory intent, nor does the evidence support a reasonable jury's finding of pretext. *Compare with Northwest Structural Components,* 822 F.Supp. at 1220–22 (denying summary judgment in a Title VII case where the plaintiff was able to produce affidavits from several different witnesses testifying to discriminatory statements made by the employer).

Therefore, even if Plaintiff is assumed to have shown satisfactory job performance, Plaintiff has failed to produce any evidence by which a reasonable jury could find that Defendant's legitimate, nondiscriminatory reason for firing Plaintiff was either false

or the pretext for a discriminatory reason. Hence, the court will grant Defendant's motion for summary judgment on Plaintiff's Title VII claim.

Plaintiff also alleges that Defendant has a history of treating white employees more favorably than black employees for the same policy violations. However, he has not produced sufficient evidence that similarly situated white employees were treated more favorably. To establish a prima facie case of racial discrimination in the application of employee discipline under Title VII, Plaintiff must show: (1) he is a member of a protected class; (2) the prohibited conduct in which he was engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against him were more severe than those enforced against other employees. *See Cook v. CSX Transportation Corp.*, 988 F.2d 507, 511 (4th Cir.1993). The *McDonnell Douglas* burden-shifting standard would apply to this claim, as well. Though he does not frame his claims in these exact terms, Plaintiff alleges that white employees were not terminated for similar infractions. Therefore, the court will consider whether Plaintiff has produced evidence satisfying his burden.

The Fourth Circuit has held that summary judgment for the employer is proper under a discriminatory enforcement claim where the plaintiff has not proffered sufficient evidence that similarly situated white employees were treated more favorably. *See id.* at 512. A court considering such a claim must consider the whole rather than focusing on one piece of the record. *Id.* The *Cook* court also stated that "only discipline imposed for like offenses" should be considered at the burden-shifting stage. *See id.* at 511.

Plaintiff's only evidence comes from his deposition testimony, in which he described allegedly similar circumstances. However, none of the circumstances was similar to Plaintiff's violations.[2] Defendant also has produced evidence of white employees who were fired for similar policy violations, such as sleeping on the job or not following work orders. Thus, Plaintiff has not shown that white employees who committed workplace violations as numerous as and similar to Gaither's were treated more favorably. When Defendant's disciplinary treatment is viewed as a whole, it does not appear that Plaintiff received a more severe punishment. Therefore, he has failed to establish a prima facie case of discrimination based on Defendant's disciplinary history.[3]

### B. Plaintiff's Contract Claim

The same standards for summary judgment discussed above apply to Plain-

---

2. In his deposition, Plaintiff named David Davis, Tony Goad, and Wayne Cameron as examples of white employees treated differently. (Pl.'s Dep. at 79.) According to Plaintiff, the personnel department did not take action after Davis was charged with sexual harassment. (*Id.*) Plaintiff said Goad was paid for weekend hours that he did not work, and that Cameron was given extra paid leave after his father died. First, none of these situations, if true, are similar to Plaintiff's infractions. Second, Jim Coffey provided explanations for these individuals that contradict Plaintiff's understanding of the circumstances. (Coffey Aff. at 5.) Moreover, Defendant produced evidence of white employees who had committed similar infractions who were terminated as Plaintiff was. (Coffey Aff., Exs. A and B.)

3. As is the case with his discriminatory termination claim, Defendant has provided legitimate, nondiscriminatory reasons for any differences in treatment among its employees. Defendant also clarified the circumstances surrounding incidents mentioned by Plaintiff, demonstrating that Plaintiff's perception of what had occurred was incorrect. For example, the other black employees whom Plaintiff alleged were fired for discriminatory reasons had similar negative employment records, as did white employees not mentioned by Plaintiff. In addition, Tony Goad was only paid for the few hours he worked on weekends, not the entire period. (Coffey Aff. at 5.) Plaintiff, had he been able to show different treatment for the same offenses, still has not produced evidence that Defendant's explanations for these individuals were pretext.

tiff's breach of contract claim. Plaintiff has failed to show that the employee handbook constituted a contract between Defendant and Plaintiff. The handbook clearly states that it is not a contract, and Plaintiff himself has acknowledged that the handbook was not a contract. Regardless, the handbook expressly states that employment may be terminated by the University at any time and for any reason. Therefore, there is no contract between Plaintiff and Defendant. The court will grant Defendant's motion for summary judgment on Plaintiff's breach of contract claim.

## III. CONCLUSION

For the reasons discussed herein, the court will grant the Defendant's Motion for Summary Judgment on each of Plaintiff's claims.

A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.