UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-1403

JIMMY W. CUPPLES,

Plaintiff - Appellant,

v.

AMSAN, LLC, d/b/a Maintenance Supply Company; AMERICAN
SANITARY INCORPORATED; GRACE CAUDLE; TENA DAVIS,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte. Frank D. Whitney,
District Judge. (3:04-cv-00574)

Argued: March 20, 2008                Decided: June 10, 2008

Before WILLIAMS, Chief Judge, and NIEMEYER and DUNCAN, Circuit
Judges.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion,
in which Chief Judge Williams and Judge Duncan joined.

**ARGUED:** Gerard Alford Bos, WILSON & BOS, Charlotte, North Carolina,
for Appellant.  Richard David Haygood, KILPATRICK & STOCKTON,
L.L.P., Raleigh, North Carolina, for Appellees. **ON BRIEF:** Betsy
Cooke, KILPATRICK & STOCKTON, L.L.P., Raleigh, North Carolina, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

In August 2004, AmSan, LLC fired Jimmy Cupples, a sales manager, after investigating a complaint of sexual harassment against him and discovering a pattern of inappropriate behavior toward female coworkers and two instances of insubordination by violating the confidentiality of its investigation. Cupples commenced this action, alleging that AmSan's investigation of the harassment complaints was pretextual and that AmSan discharged him based on his age. He was 62 years old. The district court granted AmSan's motion for summary judgment, and on appeal, we affirm.


I

Cupples began working in 1974 as a salesman for a predecessor of AmSan, which distributes janitorial and sanitary products, and he ultimately became the sales manager at its Huntersville, North Carolina location.

In July 2004, AmSan employee Grace Foure complained to Jim Core, the general manager of AmSan's Huntersville location, that Cupples had sexually harassed her. Specifically, she claimed that Cupples had pinched her rear and had said, "I just had to do that," and that these acts made her feel uncomfortable. When asked about the incident, Cupples admitted that he had touched Foure but claimed he only accidentally brushed against her with his briefcase and that he said, "Sorry, I shouldn't have done that."

2

Foure also told Core about an earlier situation in which she had complained to Cupples that other male employees were making inappropriate comments about her breasts. Cupples explained that he responded to Foure by speaking to one of the offending employees and telling him to refrain from such behavior in the future, but the employee had no memory of this discipline, and his file contained no record of it. Cupples admitted that he counseled Foure in that incident, saying that when "a bunch of guys . . . see a nice-looking woman they're going to have crazy thoughts," so even though "they shouldn't say anything to [her] about that," she should "keep [herself] from being in those positions."

In response to Foure's complaint about Cupples, Core directed Cupples to avoid all further contact with Foure. Notwithstanding this direction, however, Cupples approached Foure the next morning to apologize "if I have said or done anything inappropriate," which he thought was the "gentleman thing to do." Later that same day, he again approached Foure to ask if they were "O.K." and to say he hoped the situation "doesn't go any further, it could ruin my reputation." Foure became upset by Cupples' contacts with her and, following a discussion with Core, filed a written complaint against Cupples. The written complaint triggered a formal investigation under AmSan's harassment policy.

Core consulted with AmSan's corporate executives during the week of July 12, 2004. Terrance Collins, the Vice President for

3

human resources, located in Illinois, took over the investigation and by telephone interviewed Cupples and at least nine other employees at the Huntersville location. One employee, Tena Davis, told Collins that in March 2004, Cupples had engaged in behavior toward her similar to what Foure had described. Collins also learned about other similar prior conduct from Foure, Davis, and at least two other female employees. They reported that Cupples routinely made comments to them and touched them in ways they considered inappropriate for the workplace.

Cupples generally confirmed the incidents but described them as minimal or accidental and good-natured. He said he touched other female employees "in a kidding manner" and made comments that he thought of as "compliment[s]," but he denied saying anything overtly sexual or inappropriate.

While Collins was conducting his investigation, Cupples approached Davis and spoke with her about the complaint against him, asking her if she would serve as a "character witness" for him. This violated the express and undisputed instructions from Core and Collins not to discuss the complaint or investigation with anyone, because to do so would violate the confidentiality provisions of the company's harassment policy.

On Thursday, July 29, 2004, Core notified Cupples that he was suspended without pay and should leave the premises. The following Thursday, August 5, 2004, Cupples was summoned back to AmSan for a

4

meeting with Core and Collins, who had traveled from Illinois to Huntersville for the purpose of terminating Cupples' employment. Michael Mulhern, the CEO of AmSan, had directed Collins to fire Cupples for the accumulated complaints of his inappropriate workplace behavior, for his insubordination, and for his breach of confidentiality in discussing the complaint and investigation with others. Collins offered Cupples a 90-day severance package if he agreed to resign. When Cupples refused the package, AmSan paid him 30 days' salary in accordance with the terms of his employment agreement, which provided that either party could end their relationship without cause on 30 days' notice.

After filing a charge of discrimination and receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Cupples commenced this action, alleging that AmSan terminated his employment in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. He also sued Foure and Davis for tortious interference with contract, and he asserted defamation claims against all defendants. The gravamen of his complaint, at least as relevant to this appeal, was that AmSan's investigation of Foure's complaint was at once inadequate because it failed to explore Foure's veracity or get a better sense of "what kind of person" Cupples was, and overly aggressive because it actively sought additional complaints against him and accepted as

5

true the versions of events thus obtained. Cupples alleges that AmSan used the claims and investigation against him as a pretext for firing him when the real reason for his discharge was his age.

Following discovery, Cupples produced the following evidence on which he now relies to support his age discrimination claim.

First, a few months prior to filing her complaint against him, Foure had been among a group of employees who watched a sexual harassment training video, after which she was overheard commenting, "If they make me mad, I know how to get them."

Second, Collins testified during his deposition that he did not further investigate Foure's alleged comment after he learned about it, nor did he pursue assertions made by other AmSan employees that they thought Cupples was being "set up" or that Foure had a history of promiscuity and of making unfounded complaints.

Third, H. V. Nelson, a former AmSan executive and the owner of the predecessor company, testified during his deposition that the culture among long-time employees at the company was casual, affectionate, and family-like, including good-natured touching, like pats on the back and shoulder rubs. He testified that he believed Cupples was innocent of the conduct for which he was fired. Nelson also related a series of hearsay comments by John Muthe, the former CEO of AmSan, that payroll and healthcare costs were being driven up by older employees and thus they should "weed

6

out" older employees to control costs. (These comments were corroborated by two other former executives.) Nelson observed that several AmSan employees aged 50 or older had been "forced out" over the years, but he admitted that he had little real information as to why they had been let go. He acknowledged that his observation was mostly "speculation based on experience and based on conversations."

Fourth, AmSan's former Vice President of human resources, Morris Taormina, declared in an affidavit that it was "unprecedented at AmSan" to terminate an employee "with the years of service of Jim Cupples" for "one complaint of sexual harassment."

On cross-motions for summary judgment, the district court granted summary judgment in favor of the defendants, ruling that Cupples' claims failed as a matter of law. On appeal, Cupples challenges only the district court's ruling on his ADEA claim.

II

Cupples contends that the district court misapplied the burden-shifting test we articulated in Taylor v. Virginia Union University, 193 F.3d 219 (4th Cir. 1999) (en banc), for claims of disparate treatment with respect to being disciplined by being discharged, and that he was disciplined as a pretext for age discrimination.

7

In Taylor, we established that in order to make out a prima facie case for such a claim, a plaintiff must show (1) that he is a member of a protected class (here, the class of workers at least 40 years old protected by the ADEA, see 29 U.S.C. § 631(a)); (2) that the prohibited conduct for which he was disciplined was "comparable in seriousness to misconduct of employees outside the protected class;" and (3) that his discharge was more severe discipline for his misconduct than that received by the employees outside the protected class. Taylor, 193 F.3d at 234 (citing Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993)). If the plaintiff makes this showing, a presumption of illegal discrimination arises, and the burden of production shifts to the employer, "who must articulate a non-discriminatory reason for the difference in disciplinary enforcement." Cook, 988 F.2d at 511. If the employer articulates such a reason, "the burden shifts back to the plaintiff to demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination." Id. Importantly, "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

The district court ruled that Cupples succeeded minimally in making out a prima facie case of age discrimination but that he had offered no evidence to demonstrate that AmSan's non-discriminatory reasons were a mere pretext.

Contending that the district court committed "plain error" in awarding summary judgment to AmSan, Cupples argues that AmSan failed to articulate a legitimate non-discriminatory reason to explain the difference in discipline he received. But Cupples' argument fails to account for the fact that AmSan did articulate a non-discriminatory reason for allegedly disciplining him more severely. As Mulhern explained during his deposition, the decision to terminate Cupples was based on multiple complaints of behavior by Cupples in violation of the company's harassment policy, Cupples' breach of the confidentiality of the investigation into Foure's complaint by discussing the investigation with Davis, and Cupples' insubordination by approaching both Foure and Davis after being instructed not to have contact with them. The assertion by Taormina, the former Vice President of human resources for AmSan, that it was "unprecedented" to fire a long-term AmSan employee for "one complaint of sexual harassment" is thus virtually irrelevant because AmSan's termination of Cupples was based on far more than just "one complaint of sexual harassment."

We conclude, however, that Cupples' case fails at a far more basic level. Although it is undisputed that Cupples, who was 62

years old, was a member of the class of workers protected by the ADEA, there is no evidence in the record from which to conclude that his alleged misconduct was "comparable in seriousness to misconduct of employees outside the protected class," or that his discipline was "more severe" than theirs. Taylor, 193 F.3d at 234. While Cupples did provide examples of discipline or the lack of discipline of other employees, as to none did he supply the necessary details that made those other incidents comparable and therefore relevant. He did not show that the person disciplined was outside the protected class or that the person's conduct was comparable in seriousness to his conduct. The most that could be concluded from what he presented was that for a single complaint of harassment, the termination of the employee might not be warranted. But, as we have already noted, Cupples was charged with multiple complaints of harassment, along with other incidents of misconduct.

Also, Cupples offered no probative evidence of discriminatory animus. He points only to Nelson's testimony about the comments of former AmSan CEO James Muthe regarding the payroll and healthcare costs of older workers (which was corroborated by other executives) and Nelson's own observation that older workers were being weeded out to control costs. But this testimony was hardly probative. It referred to comments made in 2001, three years before Cupples was terminated. Moreover, Muthe himself had been discharged at the end of 2002 and therefore played no role in Cupples' firing some two

10

years later.  Finally, there is no indication or suggestion that Mulhern and Collins, the decisionmakers in Cupples' case, held such views or had any discriminatory intent.

Moreover, Nelson's testimony about Muthe's comments referred to a company policy in place at an earlier time to reduce healthcare and payroll costs.  But even if it were not remote in time, forcing out employees in furtherance of such a policy would not be based on the "prohibited stereotype" regarding older workers that is addressed by the ADEA.  Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993).  "An employee's age is analytically distinct from his" healthcare and payroll costs.  Id.

Finally, Cupples makes much of his criticism that AmSan's investigation into his misconduct was either inadequate or overly aggressive.  But focusing on the quality of internal investigations misses the point.  A federal court "does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted).  "Our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory."  Id.  If the employer's reason for termination is not forbidden by law, "it is not our province to decide whether the reason was wise, fair or even correct, ultimately, so long as it

11

was truly the reason for the plaintiff's termination." Id. (emphasis added).

We agree with the district court's conclusion that Cupples failed to present evidence sufficient to prove age discrimination, and accordingly we affirm.

AFFIRMED